OPINION.
{¶ 1} Defendant-appellant, Great American Insurance Companies ("Great American"), appeals a decision of the Mahoning County Common Pleas Court denying its motion for leave to intervene.
 {¶ 2} The complex history of this case has its beginning with an automobile accident which occurred on May 29, 1997. One of the vehicles involved in the accident was driven by George O'Hare ("O'Hare"), who was insured by plaintiff St. Paul Insurance Company ("St. Paul"). A police investigation concluded that the other vehicle was driven by plaintiff/defendant, Musa Alhamid ("Musa"), and owned by his brother, defendant Faisal Alhamid ("Faisal"). Musa denied any involvement in or knowledge of the accident. A traffic citation issued to Musa was subsequently dismissed.
 {¶ 3} Nevertheless, on November 6, 1998, St. Paul filed suit against Musa and Faisal for amounts it had paid to its insured, O'Hare, as a result of the accident. The case, captioned St. Paul Ins. Co. v.Musa Alhamid, was assigned case No. 98 CV 2554. After considerable delay, Musa ultimately referred the suit to his insurer, Great American. For various reasons, Great American declined Musa's request to defend the case and for indemnification. Consequently, Musa filed suit against Great American. That case, captioned Musa Alhamid v. Gen. Am. Ins. Co., was assigned case No. 00 CV 827.[1]
 {¶ 4} At the request of St. Paul, the trial court granted a motion to consolidate the two cases on September 29, 2000. Each of the parties filed motions to dismiss and/or for summary judgment. On April 20, 2001, the court filed a judgment entry ruling on those motions. In case No. 98 CV 2554, concerning St. Paul's claims against Musa and Faisal, the court granted Faisal's motion for summary judgment since St. Paul did not respond to it and denied Musa's motion for summary judgment, determining that genuine issues of fact existed. In Case No. 00 CV 827, concerning Musa's claim against Great American seeking defense and indemnification for case No. 98 CV 2554, the court found that Great American had a duty to defend Musa.
 {¶ 5} Following a pretrial in November 2001, the court filed a judgment entry on December 4, 2001, setting forth various rulings. Although there is nothing in the record to indicate that Great American was terminated as a defendant by way of the judgment entry granting Musa's motion for summary judgment on the duty to defend, the court stated that Great American "may intervene."
 {¶ 6} The case was ultimately set for trial on July 1, 2002. On April 22, 2002, Great American filed a motion for leave to intervene and motion for leave to file an amended answer instanter as an intervening party. Although the court had previously granted leave to Great American to intervene, the court denied both of Great American's motions on May 17, 2002, without explanation. This appeal followed.
 {¶ 7} Great American's sole assignment of error states:
 {¶ 8} "The trial court erred in denying Appellant Great American Insurance Company's Motion for Leave to Intervene and Motion for Leave to File an Answer Instanter as an Intervenor."
 {¶ 9} Great American posits the following issue for review:
 {¶ 10} "Whether a defendant's liability insurer has a right to intervene and file an answer as an intervenor in a lawsuit against its insured for the limited purpose of propounding jury interrogatories and/or jury instructions, where the jury interrogatories and/or jury instructions will be designed to determine whether any verdict which may be rendered against the insured is covered or not covered by the insured's liability insurer?"
 {¶ 11} Great American alleges that it has met all of the essential elements required for intervention of right. First, Great American argues that it has an interest relating to the transaction below because of its status as the liability insurer for Musa. Great American argues that since Musa sought coverage from Great American for St. Paul's claims, it has a very direct, pecuniary interest in the outcome of the case. Next, Great American argues that it acted timely in filing its motion to intervene, and that its interest will be prejudiced and impaired if intervention is not granted. In the event of a verdict in St. Paul's favor, Great American argues that it will be necessary to identify the basis of the imposition of liability upon Musa. Great American argues that a general verdict would be insufficient to determine the coverage issue and thus in order to protect its interest it would need to serve jury interrogatories. Lastly, Great American argues that its interest would not be adequately represented by the existing parties. Great American argues that the principal interest of St. Paul is the subrogation rights it derived from its own insured, O'Hare, and to collect money under any theory which allows them to do so. Concerning Musa, Great American argues that his interest is simply in avoiding liability and, if there is liability, to maximize coverage under his policy with Great American. Great American argues that only it has any interest in determining the basis of any judgment in favor of St. Paul so that it may determine the indemnification issue as well. As such, Great American argues that the trial court abused its discretion in denying its motion to intervene.
 {¶ 12} Civ.R. 24(A)(2) provides:
 {¶ 13} "Upon timely application anyone shall be permitted to intervene in an action * * * when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
 {¶ 14} Civ.R. 24 is given a liberal construction in favor of intervention. State ex rel. Smith v. Frost (1995), 74 Ohio St.3d 107,108, 656 N.E.2d 673.
 {¶ 15} In order for an applicant to succeed in a claim for intervention of right, the applicant must meet the four requirements set forth in Civ.R. 24(A)(2). First, the applicant must have a protectable interest relating to the property or transaction that is the subject of the action. Second, there must be a timely application. Third, the applicant must be in a position such that the disposition of the action may, as a practical matter, impair or impede the applicant's interest. Finally, the applicant's interest must be inadequately represented by the existing parties to the suit. Myers v. Basobas (1998), 129 Ohio App.3d 692,696, 718 N.E.2d 1001. Thus, Great American would be entitled to intervene only if the record establishes that each of those four elements has been met.
 {¶ 16} Ohio courts apply an abuse of discretion standard in reviewing Civ.R. 24(A)(2) motions. State ex rel. First New Shiloh BaptistChurch v. Meagher (1998), 82 Ohio St.3d 501, 503, fn. 1, 696 N.E.2d 1058. Abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.
 {¶ 17} In this case, the trial court abused its discretion in denying Great American's motion to intervene. Great American has met all of the requirements set forth above. The court clearly found that Great American has a duty to defend Musa. In order to protect its interest, it must be given the opportunity to intervene and file an amended answer. The original answer filed by Musa seeks simply to deny liability primarily by denying any involvement in or knowledge of the accident. Musa's answer in no way protects Great American's interest to minimize any potential coverage based on Musa's actions. Rather, Musa's interest is maximizing coverage under the policy. The most reasonable opportunity to determine the extent of coverage issue (separate and apart from the duty to defend issue), which was left undetermined by the trial court, is during this trial through the simple submission of jury interrogatories.
 {¶ 18} In addition, Great American cites Howell v. Richardson
(1989), 45 Ohio St.3d 365, 544 N.E.2d 878, to illustrate its assertion that it must intervene in order to protect its interest. In Howell, the defendant fired a gun into a truck occupied by the plaintiff, causing him serious injury. The plaintiff filed suit against the defendant for intentional tort and negligence. After a trial, the court determined that the defendant had acted negligently and not intentionally, and entered judgment for the plaintiff based on the negligence theory. Unable to obtain satisfaction of the judgment, the plaintiff then instituted a supplemental action against the defendant's insurer. After a trial, both parties filed motions for directed verdict. The court determined that the defendant's culpable mental state had been conclusively resolved in the earlier action. On appeal, the insurer argued that the doctrine of collateral estoppel should not have been applied to it with regard to its desire to relitigate the defendant's culpable mental state. The Ohio Supreme Court disagreed noting:
 {¶ 19} "Inasmuch as [the insurer] possessed a contractual relationship with [the defendant] and, in any event, could have intervened in the prior proceeding, it is precluded from relitigating the issue of [the defendant's] mental state.
 {¶ 20} "* * * The insurance company may legitimately decline to defend where it believes in good faith that its insured acted intentionally. It may nevertheless enter the action and participate as a third-party defendant so as to defeat any liability on its part (i.e., by demonstrating that the acts of the insured/tortfeasor were intentional).
 {¶ 21} "It is this opportunity that must be seized. Otherwise, whether seized or not, the opportunity to litigate in the original action will preclude relitigation of liability in the supplemental proceeding." Id. at 367-368, 544 N.E.2d 878.
 {¶ 22} Accordingly, Great American's sole assignment of error has merit.
 {¶ 23} The judgment of the trial court is hereby reversed and this matter is remanded for further proceedings according to law and consistent with this opinion.
Vukovich and Waite, JJ., concur.
[1] The caption in Musa's complaint erroneously named his insurer as General American. That error continued to appear in all subsequent filings. On July 31, 2002, this court filed a journal entry indicating that the correct name, Great American, be used in all subsequent filings.